# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

AVI Systems, Inc.,

    Plaintiff,

v.

John McKitrick and Netrix, LLC,

    Defendants.

Civil No. 16-2078 (JNE/HB)
TEMPORARY RESTRAINING ORDER

In this action, Plaintiff AVI Systems, Inc. ("AVI") alleges breach of a noncompete agreement by its former employee Defendant John McKitrick and tortious interference with contract by Defendant Netrix, LLC ("Netrix"), the rival company that hired McKitrick in May 2016. AVI moves for a temporary restraining order enjoining McKitrick from working at Netrix pursuant to the noncompete agreement. Dkt. No. 12. Pursuant to an expedited briefing schedule, Defendants filed a response in opposition. Dkt. No. 33.[1]

## I. Factual Background

The Court makes the following findings of fact based on the limited record before it at this early phase in the litigation.

AVI is a Minnesota-based company that provides services and products in the audiovisual, tele- and video-conferencing sphere. In February 2004, AVI hired McKitrick into its Chicago office as a System Sales Representative. This position entailed negotiating contracts and pricing on projects and bids, and building customer relationships in order to sell AVI's audiovisual systems. On July 20, 2005, McKitrick signed a noncompete agreement, which

---

[1] AVI filed a complaint on June 22, 2016. Noting deficiencies in the jurisdictional pleadings, the Court allowed AVI an opportunity to correct the deficiencies. Dkt. No. 5. On July 19, 2016, AVI filed an amended verified complaint ("Complaint"). Dkt. No. 10. The Court is satisfied at this stage that there is complete diversity and that it has jurisdiction over the case.

entitled him to additional compensation that from 2005 through 2016 exceeded $470,000. *See* Compl. ¶ 33 & Ex. 2. Defendants do not dispute the adequacy of consideration. They also agree that Minnesota law applies because of a choice-of-law provision in the noncompete agreement.

By all accounts, McKitrick was a skilled sales representative who brought in substantial business for AVI in Chicago and cultivated meaningful relationships with AVI's customers. In 2010, he was promoted to Regional Sales Manager in Chicago. After this promotion, he became eligible for a financial results bonus, which was only available to AVI employees who had signed a noncompete agreement with the company. This bonus, which McKitrick received quarterly from 2010 through 2016, contributed approximately half of the $470,000 in extra compensation for which McKitrick was eligible because of his noncompete agreement. As Regional Sale Manager, a role in which he continued to succeed at AVI, McKitrick developed a strategic goal in 2015-2016 to grow AVI's business in the real estate market segment. Melms Aff. ¶ 32, Dkt. No. 15; *see also* Compl. ¶ 39.

On May 6, 2016, McKitrick submitted a statement of resignation, effective May 20, 2016, which AVI accepted. At that time, AVI reminded him about his noncompete agreement. Around May 18, AVI became aware that McKitrick had accepted employment with Netrix, a company based in Chicago, with which McKitrick had worked on a large project in recent years. AVI notified Netrix of the existence of McKitrick's noncompete agreement.

McKitrick began employment with Netrix in Chicago around June 1, 2016. His position is Director of Operations in its Integrated Collaboration Services ("ICS") group, which is a relatively new audiovisual services group that Netrix seeks to grow out of its roots in the real estate sector. McKitrick Decl. ¶ 21, Dkt. No. 35; Melms Aff. ¶ 48 (quoting Netrix press release). Netrix issued a press release announcing its hiring of McKitrick, who brings "over 25 years of

audio/visual expertise," "project leadership," and "technical acumen" to the team. Melms Aff. Ex. 1. After taking a vacation in June, McKitrick began work at Netrix.

**II.    Discussion of AVI's Motion for Temporary Restraining Order**

In deciding whether to grant a motion for a temporary restraining order, a court considers (1) the movant's likelihood of success on the merits, (2) the threat of irreparable harm absent the injunction, (3) the balance between this harm and the harm experienced by other parties if the injunction issues, and (4) the public interest. *Dataphase Sys., Inc. v. CL Sys., Inc.*, 640 F.2d 109, 113 (8th Cir. 1981); *Select Comfort Corp. v. Tempur Sealy Int'l, Inc.*, 988 F. Supp. 2d 1047, 1052 (D. Minn. 2013). AVI bears the burden of showing that the factors favor injunctive relief. *See Dataphase*, 647 F.2d at 113.

   **a.    Likelihood of Success on the Merits**

At this early stage, the Court concludes that AVI has demonstrated that it is likely to succeed on the merits of its allegations against McKitrick; that is, AVI has a "fair chance of prevailing" on the merits. *Planned Parenthood Minnesota, N. Dakota, S. Dakota v. Rounds*, 530 F.3d 724, 732 (8th Cir. 2008) (en banc). In Minnesota, employment noncompete agreements are disfavored but "are enforceable if they serve a legitimate employer interest and are not broader than necessary to protect this interest." *Kallok v. Medtronic, Inc.*, 573 N.W.2d 356, 361 (Minn. 1998). Legitimate interests include protecting against "the deflection of trade or customers by the employee by means of the opportunity which the employment has given him." *Bennett v. Storz Broad. Co.*, 134 N.W.2d 892, 898 (Minn. 1965). "The test applied is whether or not the restraint is necessary for the protection of the business or good will of the employer, and if so, whether the stipulation has imposed upon the employee any greater restraint than is reasonably necessary to protect the employer's business." *Id.* at 899; *see also Kallok*, 573 N.W.2d at 361.

"The validity of the contract in each case must be determined on its own facts and a reasonable balance must be maintained between the interests of the employer and the employee." *Bennett*, 134 N.W.2d at 899-900.

McKitrick's agreement with AVI contained separate non-solicitation, non-disclosure, and noncompete provisions, but AVI only alleges violation of the noncompete provision, which provides:

> *[F]or six (6) months* after termination of Employee's employment with Company for any reason, *Employee shall not directly or indirectly compete with the business of Company . . . within one-hundred miles (100) [] of any Company site*. This . . . means Employee shall not, among other things, whether as an employee . . . or [in] any other capacity (1) solicit orders for any product or service that is competitive with the product or services provided by Company, [or] (2) *act by or on behalf of any business that sells products or services competitive with the products or services of Company*.

Compl. Ex. 1 ¶ 3(a), Dkt. No. 10-1 (emphasis added). It continues, "In the event Company seeks to enforce the restrictions in this paragraph 3, Employee agrees not to seek to avoid such enforcement on the grounds such restrictions are unreasonable in scope and/or duration." *Id.* ¶ 3(b). Of course, the Court is not so limited and may determine that the noncompete provision is overbroad, but the agreement contemplates that in such an event, the Court would "blue pencil" or edit the agreement to make it enforceable. *Id.*; *Davies & Davies Agency, Inc. v. Davies*, 298 N.W.2d 127, 131 n.1 (Minn. 1980).

AVI argues that McKitrick has breached the noncompete provision by accepting employment and working at Netrix in a Chicago office within 100 miles of the AVI office where he worked for over a decade. Netrix competes with AVI in the audiovisual conferencing business, and has hired McKitrick to lead a team focusing on this specific business, which Netrix aims to grow. AVI does not contend that McKitrick has solicited or will solicit orders for Netrix or that he has violated the non-disclosure or non-solicitation provisions of his agreement.

4

AVI is likely to show that this noncompete agreement is necessary to protect its legitimate business interests. Indeed, in signing the noncompete agreement, McKitrick explicitly acknowledged that the purpose of its restrictive covenants was "for the protection of the legitimate business interests, goodwill, and privacy" of AVI. Compl. Ex. 1 ¶ 4(a). An employer has a legitimate interest in protecting itself against the deflection of customers with whom its employees, during the course of their employment, have built compelling relationships. *Bennett*, 134 N.W.2d at 898. The record in this case attests to the strength of McKitrick's relationships with AVI's clients. Moreover, the fact that Netrix issued a press release touting the addition of McKitrick at the helm of its growing ICS business particularly underscores the value that Netrix attributes to having him on its team, and the inverse potential for harm to AVI. It is easy to infer that this publicity is intended to or will alert AVI's customers of McKitrick's new employer and may draw them to Netrix based on his strong connections with them. *See Medtronic, Inc. v. Advanced Bionics Corp.*, 630 N.W.2d 438, 452-53 (Minn. Ct. App. 2001) (affirming the enforcement of a noncompete where a manager "acquired personal influence over customers, an influence that [he] may take with him in his work with [his new employer]"); *cf. Alside, Inc. v. Larson*, 220 N.W.2d 274, 291 (Minn. 1974) (enforcing noncompete where salesperson helped his new employer publicize his joining the business); *Webb Publ'g Co. v. Fosshage*, 426 N.W.2d 455, 448 (Minn. Ct. App. 1988) (inferring harm where the employee had a "personal hold" on the former employer's customers). Thus, even though McKitrick's new role—in contrast to his sales team position at AVI—is internal and not strictly focused on sales and customer outreach, his ties to AVI's customers will still be valuable in growing Netrix's ICS business.

In addition, the record at this stage reflects that as a respected manager with close working relationships with upper-level executives at AVI, McKitrick had significant knowledge

of internal company strategies and initiatives. Most pertinently, he was leading a regional strategy to enhance AVI's business in the real estate sector, an initiative that appears to directly align with the competing business that he is now in charge of growing at Netrix. In addition, he is an expert on AVI's approach to price modeling for bids and is knowledgeable about a recent project to develop backend software intended to give AVI a competitive advantage through improving its processes. Minnesota courts have enforced noncompete provisions in similar circumstances, where an executive hired by a rival has "insight into customer preferences" and has knowledge that "may [] help him anticipate [his former employer's] marketing plans, business plans, product development, and marketing strategy." *Advanced Bionics*, 630 N.W.2d at 453 (enforcing 2-year noncompete provision).[2]

Moreover, AVI is likely to show that the noncompete provision is reasonably tailored to protect its interests while not unduly burdening McKitrick. Its duration and geographic scope both appear reasonable. Six months is remarkably limited compared to other noncompete agreements that have been litigated. *Compare with, e.g.*, *Boston Sci. Corp. v. Duberg*, 754 F. Supp. 2d 1033, 1039 (D. Minn. 2010) (1 year); *Advance Bionics*, 630 N.W.2d at 453 (2 years); *Webb*, 426 N.W.2d at 447, 449-50 (18 months). Geographically, he is only limited to areas coinciding with AVI's offices, and AVI seeks to enforce the provision where McKitrick has joined a competitor in the same city where he led AVI's regional sales team. *See Advance Bionics*, 630 N.W.2d at 445, 453 (affirming injunction against rendering services for any company with a competing product "that is sold or intended for use or sale in any geographic area in which [former employer] actively markets" its products); *Alside*, 220 N.W.2d at 296

---

[2] AVI does not argue, at this procedural posture, that confidential internal strategies are trade secrets, so the high standard for "inevitable disclosure" of trade secrets, *e.g.*, *Katch, LLC v. Sweetser*, 143 F. Supp. 3d 854, 869-70 (D. Minn. 2015), does not apply.

(affirming injunction applicable to metropolitan regions where a salesman had worked, and suggesting that "the injunction could probably have been granted on a much broader basis"). In addition, McKitrick is only barred from "act[ing] by or on behalf of" a company like Netrix. Should Netrix wish to employ McKitrick on sabbatical for the duration of the six months, that arrangement would not appear to be prohibited. Finally, the record reflects that McKitrick received substantial consideration for signing the noncompete agreement. Refraining for six months from working for a direct competitor in the Chicago area in connection with directly competing products and services is a reasonable bargain.

### b. Threat of Irreparable Harm

Absent an injunction, the threat of irreparable harm to AVI is serious. Netrix could benefit significantly from McKitrick's fresh knowledge of AVI's strategies with regard to the real estate segment and of AVI's new system to improve its internal processes, a risk especially acute where AVI is attempting to strengthen what it has identified as an underdeveloped business in the real estate market. In addition, with the publicized presence of a highly successful salesperson like McKitrick, Netrix could—even without any direct or indirect-but-affirmative acts by McKitrick—lure away from AVI customers with whom he has worked over the years. "[I]rreparable injury can be inferred from the breach of a restrictive covenant if the former employee came into contact with the employer's customers in a way which obtains a personal hold on the good will of the business." *Advanced Bionics*, 630 N.W.2d at 452 (quoting *Webb*, 426 N.W.2d at 448); *see also Medtronic, Inc. v. Gibbons*, 684 F.2d 565, 569 (8th Cir. 1982) (in irreparable harm analysis, considering an employee's access to confidential information and the nature of his relationships with customers). The costs of this harm would be difficult if not impossible to calculate. This factor favors issuance of the temporary restraining order.

### c. Balance of the Harms

As discussed, AVI risks suffering irreparable harm if McKitrick is not enjoined. McKitrick, in contrast, would at worst be prevented from working for fewer than six months (given the time that has already passed), a concession for which he appears to have been adequately compensated over time. Further, as noted, it is conceivable that he may remain employed by Netrix but on sabbatical for the remainder of the six months, in which case he would not even forgo salary for this time period. The balance of the harms thus favors AVI.

### d. Public Interest

Although Minnesota disfavors noncompete clauses, the public interest favors upholding valid contracts. *Advanced Bionics*, 630 N.W.2d at 456. There is "no injury to the public interest" where "a reasonable balance has been struck between protecting the business of the employer and not unreasonably limiting the rights of the employee." *Alside*, 220 N.W.2d at 296. This factor too favors AVI.

### e. Conclusion

On this limited record at this early stage, a temporary restraining order enforcing the narrow portion of McKitrick's noncompete agreement at issue in this action is merited. Because the injunction will bind all parties pursuant to Federal Rule of Civil Procedure 65(d)(2), it is unnecessary at this point to evaluate AVI's claims against Netrix or separately enjoin Netrix.

## III.   Other Issues

In its motion for a temporary restraining order, AVI also seeks attorney fees pursuant to a clause in McKitrick's noncompete agreement. It acknowledges that the timing may be premature. The Court agrees that it is premature.

In addition, AVI later filed a motion for expedited discovery, Dkt. No. 25, which it sought to have heard at the already-noticed hearing on its motion for a temporary restraining order. The parties should meaningfully meet and confer on this separate motion. If they cannot reach agreement, the parties may contact the magistrate judge regarding whether expedited discovery should be conducted.

Based on the files, records, and proceedings herein, and for the reasons stated above, IT IS ORDERED THAT:

1. Plaintiff's Motion for Temporary Restraining Order [Dkt. No. 12] is GRANTED to the extent herein indicated.

2. Defendant John McKitrick shall not, as an employee or in any other capacity, act by or on behalf of competitor Netrix, LLC in its Chicago, Illinois office or in any other office within 100 miles of any office of AVI Systems, Inc., for the remainder of the six-month period following his termination from AVI Systems, Inc. on May 18, 2016.

3. This Order shall take effect on Plaintiff's posting of security in the amount of $135,000.

4. Unless otherwise ordered, this Order shall expire 14 days after its entry.

5. After engaging in a meaningful meet and confer, if no agreement on Plaintiff's request for expedited discovery is reached, the parties may contact the magistrate judge regarding whether expedited discovery should be conducted.

Dated: August 4, 2016

s/ Joan N. Ericksen
JOAN N. ERICKSEN
United States District Judge